MICHAEL J. MORIARTY and Others, on Behalf of Themselves and All Other Stockholders of JAMES BUTLER GROCERY COMPANY, Similarly Situated, Individually, and on Behalf of JAMES BUTLER GROCERY COMPANY, Respondents, v. JAMES BUTLER GROCERY COMPANY and Others, Defendants, Impleaded with JAMES BUTLER, JR., and Others, as Executors of the Last Will and Testament of JAMES BUTLER, Deceased, and JAMES BUTLER, JR., D. PHILIP MACGUIRE, WALTER E. TRAVERS, SEMINOLE CONDENSED MILK CO., INC., and PEERLESS CONSTRUCTION AND REPAIR CO., INC., Appellants.

First Department, December 20, 1940.

*Alfred J. L'Heureux* of counsel [*Peter X. McManus* and *Frederick S. Rogan* with him on the brief; *Morgan & Lockwood*, attorneys], for the appellants James Butler, Jr., D. Philip MacGuire and Walter E. Travers.

*Rogan & Rogan*, attorneys for the appellants Seminole Condensed Milk Co., Inc., Peerless Construction and Repair Co., Inc., James Butler, Jr., and others, as executors, etc., of James Butler, deceased.

*William R. Rawick* of counsel [*George Gussaroff* and *Garey & Garey* with him on the brief; *Joseph Nemerov*, attorney], for the respondents.

GLENNON, J.  This is a derivative action instituted by certain minority stockholders of James Butler Grocery Company against the executors of the estate of James Butler, deceased, Seminole Condensed Milk Co., Inc., and Peerless Construction and Repair

Co., Inc., on the ground that the decedent entered into a fraudulent scheme whereby excessive prices were charged the grocery company by the two corporate defendants thereby causing James Butler, deceased, or his estate to be enriched at the expense of the grocery company and its stockholders. Certain of the directors of the grocery company were also named as parties defendant on the ground of negligence in the performance of their duties. In the case of Seminole an accounting has been directed from September, 1925, to 1933, whereas in the case of Peerless the accounting covers the period from 1925 to 1936.

At the outset it might be well to point out that the grocery company was reorganized under section 77B of the Bankruptcy Act in the United States District Court for the Eastern District of New York in 1936. In the latter part of 1936 or early in 1937 the grocery company, by voluntary petition, was adjudicated a bankrupt. In connection with the bankruptcy proceedings the referee in bankruptcy made an order authorizing and directing the trustee in bankruptcy " to disclaim and to reject and abandon as a worthless asset of the estate in bankruptcy the action now pending in the New York Supreme Court, New York County, by Michael J. Moriarty and others, as plaintiffs * * * to recover judgment for the bankrupt against James Butler and others, as defendants * * *."

The grocery company was organized in 1907. James Butler, deceased, held over seventy per centum of the stock from that time until his death on February 20, 1934. Seminole was incorporated in 1907 by James Butler, deceased, who contributed its entire capital amounting to $50,000. Later, in 1915, he turned over to Seminole an additional sum of $75,000. The proof is quite clear that none of this money was ever refunded to him. Seminole was organized for the purpose, in the first instance, of supplying condensed milk and later on evaporated cream sufficient for the grocery company's needs.

An examination of the record indicates that neither James Butler, deceased, nor any member of his family ever received any money as salary or dividends from Seminole from the date it was organized until it ceased doing business in 1933. At the conclusion of the trial of this case, the justice presiding said in part: " I do not find that the evidence warrants that the organization [Seminole] was made with any corrupt motive, nevertheless, as to the dealings of that corporation, it is bound by the rules of exercising the utmost good faith. That company was actually run as if it were a department of the grocery company." With this statement we are in accord.

The plaintiffs failed to produce any proof which would indicate that Seminole ever made any profit out of its dealings in milk at the expense of the grocery company and yet it was decreed that a reference should be had to determine the so-called profits. We believe that if plaintiffs were to succeed, the burden of proof rested upon them of establishing upon the trial that profits actually were made by Seminole to the detriment of the grocery company.

The Peerless company was organized by James Butler, deceased, for the purpose, among others, of assisting the grocery company in taking care of supplies and repair work which ordinarily are not handled by a grocery concern. Peerless, generally speaking, had charge of the preparation and opening of new stores and the dismantling of others. It purchased and supplied the materials in connection with that work and, in addition thereto, made necessary repairs on the trucks and other conveyances which were used by the grocery company. It purchased large quantities of gasoline and oil at a considerable saving. The grocery company was given the benefit of the decreased price which resulted from the bulk purchases. While some of the gasoline and oil was resold to the Empire City Race Track, the Butler farm at Eastview, N. Y., and also to the Laurel track of Maryland, those transactions undoubtedly inured to the benefit of Peerless and the grocery company by reason of the fact that better prices could be obtained when commodities were purchased in large quantities.

For a number of years the grocery company, like the other enterprises, paid five per centum more than the cost. Later that sum was increased to ten per centum. The overhead of Peerless was paid for out of the income derived from the percentage added to the net cost. The court has found as a fact that Peerless occupied space in the grocery company warehouse and paid a rental of $450 a month for its use. Salaries of the secretary-treasurer, bookkeeper and stock room clerk were paid by Peerless in addition to its insurance premiums and its general overhead. It maintained a gasoline and oil filling station and repair shop at its own expense. This, it seems to us, is an indication of fair dealing rather than wrongdoing on the part of James Butler, deceased, who contributed the entire capital of this company amounting to $5,000.

The evidence shows that the only money that James Butler, deceased, ever received from the Peerless company was the sum of $55,000 which was turned over to the grocery company for its benefit. No dividends were ever paid to him or any member of his family for personal use. The record can be searched in vain to find any fraud or misconduct on the part of James Butler, deceased, in connection with the operation of either the Seminole or Peerless companies.

Since no wrongdoing on the part of James Butler, deceased, has been established, it would follow that there could have been no negligence on the part of the codefendants because of their failure to detect it. We deem it to be highly unnecessary to saddle either his estate or the directors who were in control during the period for which the accounting has been ordered, with the costs of an expensive reference for the purpose of determining whether or not either Seminole or Peerless made profits which, if found, might be credited to the account of the grocery company. If wrong there was, and profits improperly made, they should have been established upon the trial of this case rather than before a referee.

In the amended complaint we find the following statement:

"*Forty-sixth.* No demand has been made by the plaintiffs upon the defendant Company to institute the within action for the reason that the individual defendants, or most of them, are the present officers and directors of the defendant Company and are in full control and in charge of the affairs of that corporation, and that for that reason such a demand would be one to sue themselves and would be futile and useless."

It appears that after the grocery company was reorganized, a special meeting was held on May 25, 1936, at which R. A. McKee, A. J. Kramer and W. P. Dunn, who were designated by certain creditors, became directors of the grocery company. As a result of the reorganization, the board was increased to seven members. Only James Butler and William M. Butler from the old company remained on the new board. This suit was instituted in October, 1936, while the new board of seven members was functioning. No demand was made upon the board as constituted to institute this action. In fact one of the members testified, in effect, that had any such demand been made, he would have given it serious consideration. We believe that the failure on the part of the plaintiffs to make a proper demand deprives them of the right to proceed with this action.

We are, therefore, inclined to the view that the complaint should be dismissed for two reasons: *First,* as to the merits, plaintiffs have failed to make out a cause of action which would entitle them to an accounting. *Second,* plaintiffs failed to make due demand on the board of directors as constituted at the time this suit was started.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

Martin, P. J., Dore and Cohn, JJ., concur; Untermyer, J., dissents and votes to affirm.

Interlocutory judgment reversed, with costs, and the complaint dismissed, with costs. The defendant James Butler, Jr., having died October 20, 1940, subsequent to the argument of the appeal, the above determination is ordered to be entered *nunc pro tunc* as of October 1, 1940. Settle order on notice reversing findings inconsistent with this determination and making such new findings of fact proved on the trial as are necessary to sustain the judgment hereby awarded.